UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:12CV-P12-M

MARQUEE FAULKNER                                                                                        PLAINTIFF

v.

JOE BLUE *et al.*                                                                                              DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on initial review of Plaintiff Marquee Faulkner's *pro se* complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the official-capacity claims will be dismissed, and the Court will provide Plaintiff with an opportunity to amend the complaint to sue Defendants in their individual capacities.

### I.

Plaintiff, a convicted inmate currently incarcerated at the Warren County Detention Center, filed a *pro se* complaint on a 42 U.S.C. § 1983 form against the following Defendants employed at the Hopkins County Jail: Jailer Joe Blue, Corporal Conrad, Captain Lewis, and Nurse Michelle. He does not indicate in which capacity he sues Defendants. He also sues the City of Madisonville, Kentucky. He alleges that he was denied necessary medical care under Ky. Rev. Stat. § 441.045.

Plaintiff reports that when getting down from the top bunk on July 16, 2011, he felt a "real sharp pain coming from the right side of my hip." As he walked, he became dizzy, and as he was trying to get back in his bunk, he passed out. Other inmates hit the emergency button, and when Plaintiff awoke, several officers and Nurse Michelle were at his aid. Nurse Michelle

asked Plaintiff questions and checked his pulse.  Plaintiff advised her that he had sharp pains coming from a bump on his hip that had grown within a four-day period.  When Plaintiff showed her the bump, he noticed that it had started leaking blood and pus and knew that this needed medical attention.  Nurse Michelle, however, advised him to take it easy, to take a few days off of work, and to submit a sick-call sheet.  Plaintiff was placed in a chair and rolled from cell 108 and placed in cell 223 for one hour.  He was then returned to cell 108, where he stayed in his bunk for two days in pain, during which time he asked several officers for bandaids and a sick-call sheet but was refused.  Since he did not get any help, he decided to go to work to try to catch the nurse.

      While at work, claims Plaintiff, he was "maliciously denied medical treatment by Corporal Conrad."  When he got to work, Plaintiff told Corporal Conrad that he had a medical issue that needed treatment and showed Corporal Conrad the cyst on his leg that "was bleeding and leaking poison."  Plaintiff told Corporal Conrad that he was using toilet paper to keep it from getting on his uniform.  Corporal Conrad stated that he would take Plaintiff to the nurse, but instead of doing so, he put Plaintiff in the laundry room with the other workers.  Plaintiff asked if he could at least have some bandaids to which Corporal Conrad replied in the affirmative and then shut the laundry room door.  Corporal Conrad then told Plaintiff to go out into the hallway and sweep and pick up trash.  After finishing his tasks, Plaintiff was told to return to the laundry room.  As Plaintiff sat in the laundry room in pain, he saw Corporal Conrad walk past several times.  At one point, Plaintiff advised Corporal Conrad that his leg was bleeding even more and needed treatment, but Corporal Conrad ignored him.  At 4:00 a.m. a nurse was on the walk for "med call."  When Plaintiff asked Corporal Conrad if he could grab some bandaids from the

nurse, "Corporal Conrad opened the laundry room door and aggressively demanded that I step out of the laundry room. He begin to yell and scream at me . . . saying 'If I asked him again, he was going to lock me down and all you are doing is making it harder on yourself." Plaintiff then asked Corporal Conrad if he could see the nurse who was still giving pills out to cell 104. Corporal Conrad told Plaintiff that the nurse could not see him and that "it wasnt his problem."

After work, when Plaintiff was being placed back in cell 108, he asked Corporal Conrad for a grievance and sick-call sheet but was refused both. Over the next couple of days, Plaintiff asked several walk officers for grievances and a sick-call sheet without response. Finally, Plaintiff got a sick-call sheet from another inmate, and Officer O'Rally gave him a grievance form. Plaintiff reports filling out grievances but receiving no treatment. He also reports submitting a sick-call sheet but receiving no response.

Sometime thereafter, on one occasion on the way back from recreation, Plaintiff stopped Nurse Michelle while she was on pill-call duty and asked her for some bandaids or some type of treatment for his hip but was told to go to his cell.

Plaintiff reports filing several more grievances and grievance appeals hoping to get medical treatment and help from the jailer to no avail. He states that he was told by Captain Lewis that his medical problems were not serious and that as long as he was walking on his own two feet, it was not an emergency. Plaintiff reports appealing the grievances but that Jailer Blue "agreed with what was going on."

Plaintiff reports that this denial of medical treatment lasted for several weeks, during which time he had to take care of himself with help from other inmates who gave him bandaids and sterilized pads. Weeks later, Plaintiff got another cyst on the left side of his hip. When he

3

told officers about it, they gave him a sick-call sheet. That same day, Plaintiff was examined by an unnamed nurse. He was removed from his work-cell pod and placed in the segregation unit, where he stayed for ten days during which time he was given pills. After release from segregation, he went back to work, and two-weeks later, he was transferred to another facility. Plaintiff reports that he still has scars from this incident.

As relief, Plaintiff seeks $1.2 million in damages, an apology from the Hopkins County Jail, and proper medical care.

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972), the duty "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d

340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). First, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States," *West v. Atkins*, 487 U.S. 42, 48 (1988), and second, he "must show that the alleged deprivation was committed by a person acting under color of state law." *Id.* "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

While Plaintiff meets the second element as he sues Defendants "acting under color of state law," he fails to allege the second element, the violation of a federal right. Instead, he alleges that he was denied "necessary medical care" under a state statute – Ky. Rev. Stat. § 441.045. In liberally construing the *pro se* complaint, however, the Court concludes that Plaintiff is alleging deliberate indifference to a serious medical need under the Eighth Amendment to the United States Constitution.

### A. Defendants Blue, Conrad, Lewis, and Michelle

Plaintiff fails to specify in which capacity he sues Defendants Blue, Conrad, Lewis, and Michelle. "Personal-capacity suits [also referred to as individual-capacity suits] seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* at 165-66 (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)).

"[Section] 1983 plaintiffs must clearly notify defendants of the potential for individual liability." *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001). "When a § 1983 plaintiff fails to affirmatively plead capacity in the complaint, we then look to the course of proceedings" to ascertain whether the defendant has been notified of the potential for personal liability. *Id.* In the present case, the complaint is devoid of any indication that Defendants have been sued in their individual capacity. Although "subsequent filings in a case may rectify deficiencies in the initial pleadings," *id.* at 774, Plaintiff's filings after his initial complaint do not suggest that Defendants are being sued in their individual capacity. The Court concludes that Defendants Blue, Conrad, Lewis, and Michelle are being sued in their official capacity only.

If an action is brought against an official of a governmental entity in his or her "official capacity," the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Therefore, in the case at bar, Plaintiff's official-capacity claims against Defendants Blue, Conrad, Lewis, and Michelle are actually against the municipality for which they work – Hopkins County.

When a § 1983 claim is made against a municipality, the Court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80

7

(1986)) (emphasis in original). A plaintiff seeking to hold a municipality liable under § 1983 must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* at 403-04. "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404.

"Beyond having to identify 'conduct properly attributable to the municipality itself,'" *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. at 404), a plaintiff "must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Cherrington v. Skeeter*, 344 F.3d at 645 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. at 404) (internal quotation marks omitted). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Cherrington v. Skeeter*, 344 F.3d at 645 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. at 404) (internal quotation marks omitted). Simply stated, "a plaintiff must 'identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)).

In the instant case, Plaintiff alleges a denial of "necessary medical care" by Defendants from July 16, 2011, through August 19, 2011. He fails to allege the existence of a governmental policy or custom relative to the nature of his complaints and claims. Plaintiff wholly fails to show a direct causal link between any municipal action and the deprivation of any federal right. And, "a municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).

As nothing in the complaint demonstrates that the alleged injury to the plaintiff resulted from the application of any Hopkins County policy or custom, *see Bennett v. City of Eastpointe*, 410 F.3d 810, 819 (6th Cir. 2005) ("The claimant has the burden of proof for establishing the existence of an unconstitutional policy and demonstrating the link between the policy and the alleged injuries at issue."), the complaint fails to establish a basis of liability against the county and therefore fails to state a cognizable § 1983 claim. Having determined that the municipality cannot be held liable for the alleged harm, this Court need not address whether the harm was caused by a constitutional violation.

### B. *City of Madisonville*

The same municipal-liability analysis applies to Defendant City of Madisonville. Plaintiff fails to allege in the complaint any policy or custom by the City of Madisonville that caused his injury. The complaint, therefore, fails to establish a basis of liability against the City of Madisonville warranting dismissal of the claims against that Defendant.

## IV.

For the reasons set forth more fully above,

**IT IS ORDERED** the official-capacity claims against Defendants Blue, Conrad, Lewis, and Michelle and all claims against the City of Madisonville are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Before dismissing the action, however, the Court will provide Plaintiff an opportunity to file an amended complaint naming Defendants in their individual/personal capacities.

**IT IS THEREFORE ORDERED** that within **30 days** from the date of entry of this Memorandum Opinion and Order, Plaintiff may file an amended complaint. Plaintiff's failure to file an amended complaint within the time allowed **will result in dismissal** of the action.

The Clerk of Court is **DIRECTED** to send Plaintiff a form for filing a § 1983 action for his use should he wish to file an amended complaint.

Date: September 28, 2012

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc:   Plaintiff, *pro se*
      Defendants
      Hopkins County Attorney
4414.005